[Cite as *State v. Ward*, 2018-Ohio-2572.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## CLARK COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| *Plaintiff-Appellee* | : | Appellate Case No. 2017-CA-81 |
| | : | |
| v. | : | Trial Court Case No. 2016-CR-616 |
| | : | |
| BRIAN WARD | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| *Defendant-Appellant* | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 29th day of June, 2018.

. . . . . . . . . . .

ANDREW P. PICKERING, Atty. Reg. No. 0068770, Assistant Prosecuting Attorney, Clark County Prosecutor's Office, 50 East Columbia Street, Suite 449, Springfield, Ohio 45502
    Attorney for Plaintiff-Appellee

CRAIG M. JAQUITH, Atty. Reg. No. 0052997, Assistant State Public Defender, 250 East Broad Street, Suite 1400, Columbus, Ohio 43215
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, P.J.

{¶ 1} Defendant-appellant, Brian Ward, appeals from his conviction and sentence in the Clark County Court of Common Pleas after he pled guilty to possession of heroin. In support of his appeal, Ward claims that his Fifth Amendment right against self-incrimination was violated during his presentence investigation interview because he was compelled to make incriminating statements regarding his drug use that subjected him to a harsher sentence. For the reasons outlined below, the judgment of the trial court will be affirmed.

**Facts and Course of Proceedings**

{¶ 2} On December 27, 2016, Ward was indicted for possessing heroin in an amount greater than or equal to one gram, but less five grams, in violation of R.C. 2925.11(A), a fourth-degree felony. Ward was to be arraigned on December 29, 2016, but he failed to appear at court. As a result, the trial court issued a warrant for Ward's arrest. Ward was subsequently arrested on June 1, 2017. Following his arrest, Ward appeared at his arraignment and pled not guilty. Upon oral motion for bond, the trial court agreed to release Ward on his own recognizance under the following conditions:

(1) Comply with all criminal provisions of the Ohio Revised Code;

(2) Appear before the Court for all hearings, pre-trials, trial, and any other matters set by the Court;

(3) Engage in no contact, directly or indirectly, with the alleged victim or victims in this case; and

(4) Submit to random drug screenings.

Arraignment Entry (June 9, 2018), Clark C.P. No. 2016-CR-616, Docket No. 8.

{¶ 3} On August 3, 2017, Ward entered a plea agreement with the State and pled guilty to possession of heroin. In exchange for Ward's guilty plea, the State agreed to reduce the offense level from a fourth-degree felony to a fifth-degree felony and to request a presentence investigation ("PSI"). The trial court accepted Ward's guilty plea and scheduled the matter for sentencing on August 24, 2017. The trial court also ordered Ward's own recognizance bond to remain in effect pending the sentencing hearing with the added condition that Ward cooperate fully with the probation department during the PSI.

{¶ 4} At Ward's sentencing hearing, the trial court stated that it had reviewed the PSI report, which indicated that Ward admitted to smoking marijuana three times a week and using heroin daily. Ward admitted that he last used each drug on August 6, 2017, three days after he entered his guilty plea.

{¶ 5} The PSI report also indicates that Ward did not cooperate with the probation department as the trial court had ordered. Specifically, the PSI report indicates that when the probation officer gave Ward the PSI questionnaire, Ward cursed and claimed that he did not think he should have to complete the questionnaire just to be placed on probation. Ward also claimed that it was the probation department's job to fill out the questionnaire.

{¶ 6} The PSI report further indicates that the probation officer sent the PSI questionnaire home with Ward. The probation officer then attempted to call Ward on two occasions in order to obtain further information about Ward's drug and alcohol treatment. In doing so, the probation officer left messages with Ward's grandfather. Ward, however,

never responded to the messages. The probation officer then conducted a visit of Ward's home, during which time the probation officer left his business card with Ward's grandmother, who confirmed that Ward lived at the residence. Thereafter, Ward once again failed to respond to the probation officer's request to contact him.

{¶ 7} After the trial court notified Ward that it had reviewed the PSI report, Ward apologized for his behavior toward the probation department and claimed that he was frustrated with the PSI questionnaire because he cannot read or write. The trial court, nevertheless, found that Ward had violated the conditions of his bond by failing to cooperate with the probation department during his PSI interview and by failing to comply with all criminal provisions of the Ohio Revised Code based on his admitted marijuana and heroin use. The trial court also noted that it had reviewed Ward's criminal record, which indicated that Ward had previously violated the rules of his probation. Thereafter, the trial court found that Ward was not amenable to community control sanctions and sentenced him to ten months in prison.

{¶ 8} Ward now appeals from his conviction and sentence, raising a single assignment of error for review.

## Assignment of Error

{¶ 9} Ward's assignment of error is as follows:

MR. WARD'S FIFTH AMENDMENT RIGHTS WERE VIOLATED WHEN HE WAS COMPELLED DURING HIS PSI INTERVIEW TO ADMIT TO CONDUCT THAT MADE HIM ELIGIBLE FOR A PRISON TERM INSTEAD OF COMMUNITY CONTROL.

{¶ 10} Under his sole assignment of error, Ward contends that his Fifth Amendment right against self-incrimination was violated during his PSI interview because he was compelled to make incriminating statements regarding his drug use that the trial court used to impose a harsher sentence. Ward claims that had he not been required to answer questions regarding his drug use, he would have been statutorily ineligible for a prison term under R.C. 2929.13(B)(1). We disagree.

{¶ 11} R.C. 2929.13(B)(1)(a) mandates the imposition of community control sanctions for a felony of the fourth or fifth degree that is not an offense of violence or a qualifying assault offense when the following requirements are met:

(i) The offender previously has not been convicted of or pleaded guilty to a felony offense.

(ii) The most serious charge against the offender at the time of sentencing is a felony of the fourth or fifth degree.

(iii) If the court made a request of the department of rehabilitation and correction pursuant to division (B)(1)(c) of this section, the department, within the forty-five-day period specified in that division, provided the court with the names of, contact information for, and program details of one or more community control sanctions of at least one year's duration that are available for persons sentenced by the court.

(iv) The offender previously has not been convicted of or pleaded guilty to a misdemeanor offense of violence that the offender committed within two years prior to the offense for which sentence is being

imposed.

R.C. 2929.13(B)(1)(a)(i)-(iv).

{¶ 12} Under R.C. 2929.13(B)(1)(b), a trial court has discretion to impose a prison term on a defendant who otherwise would fit within the scope of division (B)(1)(a) if one or more listed factors apply. Relevant to this case is the factor listed under R.C. 2929.13(B)(1)(b)(iii), which provides that the trial court has discretion to impose a prison term if "the offender violated a term of the conditions of bond as set by the court."

{¶ 13} In this case, the trial court found that the factor in R.C. 2929.13(B)(1)(b)(iii) applied to Ward because he violated not just one, but two conditions of his bond. As previously discussed, the first violation resulted from Ward possessing and using drugs while on bond. The second violation resulted from Ward failing to cooperate with the probation department during his PSI interview. Due to the second bond violation for failing to cooperate with the probation department, Ward would have been eligible for a prison term under R.C. 2929.13(B)(1)(b)(iii) regardless of the incriminating statements he made about his drug use and possession.

{¶ 14} We further find that no Fifth Amendment violation occurred as a result of the incriminating statements elicited during the PSI interview process. "The Fifth Amendment to the United States Constitution provides in relevant part that no person 'shall be compelled in any criminal case to be a witness against himself.' " *United States v. Vreeland*, 684 F.3d 653, 658 (6th Cir.2012). "[T]his prohibition not only permits a person to refuse to testify against himself at a criminal trial in which he is a defendant, but also 'privileges him not to answer official questions put to him in any other proceeding * * * where the answers might incriminate him in future criminal proceedings.' "

*Minnesota v. Murphy*, 465 U.S. 420, 426, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984), quoting *Lefkowitz v. Turley*, 414 U.S. 70, 77, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973). As noted in *United States v. Monia*, 317 U.S. 424, 63 S.Ct. 409, 87 L.Ed. 376 (1943):

> The [Fifth] [A]mendment speaks of compulsion. It does not preclude a witness from testifying voluntarily in matters which may incriminate him. If, therefore, he desires the protection of the privilege, he must claim it or he will not be considered to have been "compelled" within the meaning of the Amendment.

(Footnote omitted.) *Id.*, 317 U.S. at 427.

{¶ 15} Insofar as Ward seeks redress for a violation of his Fifth Amendment rights, the United States Supreme Court's decision in *Murphy* precludes the relief he requests. "Under *Murphy*, the [F]ifth [A]mendment privilege against self-incrimination is not self-executing in the context of a meeting with a probation officer." *United States v. Miller*, 910 F.2d 1321, 1326 (6th Cir.1990), citing *Murphy*, 465 U.S. at 425. Specifically, the United States Supreme Court in *Murphy* held that:

> [S]ince Murphy revealed incriminating information instead of timely asserting his Fifth Amendment privilege, his disclosures were not compelled incriminations. Because he had not been compelled to incriminate himself, Murphy could not successfully invoke the privilege to prevent the information he volunteered to his probation officer from being used against him in a criminal prosecution.

*Id.* at 440.

{¶ 16} "The general obligation to appear before [a] probation officer and answer

questions truthfully [does] not in itself convert [defendant's] otherwise voluntary statements into compelled ones." *Id.* at paragraph (a) of syllabus. *Accord Miller,* 910 F.2d 1321 (no compelled incrimination in violation of the Fifth Amendment where defendant failed to assert his Fifth Amendment privilege during a presentence meeting with his probation officer and revealed incriminating information to his probation officer that resulted in the probation officer's recalculation of the defendant's base offense level and sentencing range for his drug offense). *See also Garner v. United States*, 424 U.S. 648, 654, 96 S.Ct. 1178, 47 L.Ed.2d 370 (1976) ("if a witness under compulsion to testify makes disclosures instead of claiming the privilege, the government has not 'compelled' him to incriminate himself").

{¶ 17} In this case, there is nothing in the record indicating that Ward invoked his Fifth Amendment right against self-incrimination during the PSI interview process. As a result, Ward relinquished the protections afforded by the Fifth Amendment when he voluntarily answered the probation officer's questions regarding his drug use and possession.

{¶ 18} There are, however, three exceptions that will excuse a defendant's failure to invoke Fifth Amendment protections, none of which apply here. Those exceptions are: (1) "custodial interrogation"; (2) situations where the assertion is penalized to an extent that a "free choice to remain silent" is foreclosed; and (3) situations where parties fail to file tax returns rather than identifying themselves as gamblers and asserting the Fifth Amendment privilege. *State v. Schimmel*, 2017-Ohio-7747, 85 N.E.3d 774, ¶ 17 (2d Dist.), quoting *Murphy* 465 U.S. at 429-430, 434, and 439.

{¶ 19} With regard to custodial interrogation, *Miranda v. Arizona*, 384 U.S. 436, 86

S.Ct. 1602, 16 L.Ed.2d 694 (1966) requires "the exclusion of incriminating statements obtained during custodial interrogation unless the suspect fails to claim the Fifth Amendment privilege after being suitably warned of his right to remain silent and of the consequences of his failure to assert it." *Murphy*, 465 U.S. at 430, citing *Miranda*, 384 U.S. at 467-469, 475-477. "[T]his extraordinary safeguard 'does not apply outside the context of the inherently coercive custodial interrogations for which it was designed.' " *Id.*, quoting *Roberts v. United States*, 445 U.S. 552, 560, 100 S.Ct. 1358, 63 L.E.2d 622 (1980). *Miranda* defined custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda* at 444. "[T]he ultimate inquiry is simply whether there [was] a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983), quoting *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977).

{¶ 20} In this case, Ward was not subject to a custodial interrogation during the PSI interview, as he was released on bond and permitted to complete the PSI questionnaire at home. Accordingly, he was not deprived of his freedom of action in any significant way. Moreover, the Sixth Circuit Court of Appeals has noted that " '*Miranda* has never been applied, to our knowledge, to routine presentence interviews conducted for the benefit of a district judge in the exercise of his substantial discretion at sentencing' " and found "no reason to do so." *Miller*, 910 F.2d at 1326, quoting *Baumann v. United States*, 692 F.2d 565, 576 (9th Cir.1982). We agree, and find that the "custodial interrogation" exception does not apply.

{¶ 21} The second exception concerns "penalty cases," i.e., cases where self-incrimination is threatened and "the assertion of the [Fifth Amendment] privilege is penalized so as to 'foreclos[e] a free choice to remain silent, and * * * compe[l] * * * incriminating testimony.' " *Murphy*, 465 U.S. at 434, 104 S.Ct. 1136, 79 L.Ed.2d 409, quoting *Garner*, 424 U.S. at 661, 96 S.Ct. 1178, 47 L.Ed.2d 370. In other words, "a State may not impose substantial penalties because a witness elects to exercise his Fifth Amendment right not to give incriminating testimony against himself." *Lefkowitz v. Cunningham*, 431 U.S. 801, 805, 97 S.Ct. 2132, 53 L.Ed.2d 1 (1977). Neither the statute nor the criminal rule governing PSIs penalizes a defendant for invoking his Fifth Amendment right to remain silent during a PSI interview. *See* R.C. 2951.03 and Crim.R. 32.2. Moreover, there is nothing in the record indicating that Ward was otherwise threatened with any penalties for not answering the probation officer's questions about his drug use. Accordingly, the "penalty case" exception also does not apply.

{¶ 22} The third exception involves situations where parties fail to file tax returns in lieu of identifying themselves as gamblers. *Murphy*, 465 U.S. at 439. "In recognition of the pervasive criminal regulation of gambling activities and the fact that claiming the privilege in lieu of filing a return would tend to incriminate, the Court has held that the privilege may be exercised by failing to file." *Id.*, citing *Marchetti v. United States*, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968); *Grosso v. United States*, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968). (Other citation omitted.) Unlike a gambler who would otherwise be forced to supply incriminating information by filing a tax return, Ward was able to claim the Fifth Amendment privilege as soon as the probation officer asked him questions that would elicit incriminating information. Accordingly, the third exception for

excusing a defendant's failure to invoke Fifth Amendment protections likewise does not apply.

{¶ 23} Because Ward did not invoke his Fifth Amendment right against self-incrimination during the PSI interview process, and because none of the exceptions that excuse a defendant's failure to invoke the Fifth Amendment privilege apply, there was no Fifth Amendment violation when the probation officer elicited incriminating statements regarding Ward's drug use and possession during the PSI interview. Accordingly, Ward's sole assignment of error is overruled.

## Conclusion

{¶ 24} Having overruled Ward's sole assignment of error, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

HALL, J. and TUCKER, J., concur.

Copies mailed to:

Andrew P. Pickering
Craig M. Jaquith
Hon. Douglas M. Rastatter