[Cite as *State v. Downing*, 2024-Ohio-381.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2023-04-044 |
| | : | O P I N I O N |
| - vs - | | 2/5/2024 |
| | : | |
| JUSTIN DOWNING, | : | |
| Appellant. | : | |

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2022-04-0564

Michael T. Gmoser, Butler County Prosecuting Attorney, and Michael Greer, Assistant Prosecuting Attorney, for appellee.

Repper-Pagan Law, Ltd., and Christopher J. Pagan, for appellant.

**HENDRICKSON, P.J.**

{¶ 1}   Appellant, Justin Downing, appeals from the sentence he received in the Butler County Court of Common Pleas following his guilty plea to two counts of sexual battery.  For the reasons discussed below, we affirm in part, reverse in part and remand this matter to the trial court for the limited purpose of issuing a nunc pro tunc sentencing entry.

**{¶ 2}** On April 27, 2022, appellant was indicted in count one with sexual battery in violation of R.C. 2907.03(A)(5) and in count two with unlawful sexual conduct with a minor in violation of R.C. 2907.04(A), both felonies of the third degree. The charges arose out of allegations that between August 1, 2021 and November 4, 2021, appellant engaged in sexual conduct with his stepdaughter "Jane" in a home in Fairfield, Butler County, Ohio.[1] Jane was 14 years old at the time of the offenses.

**{¶ 3}** A superseding indictment was filed on July 6, 2022, setting forth three additional charges for offenses that occurred in Hamilton, Butler County, Ohio. In counts three and four, appellant was charged with sexual battery in violation of R.C. 2907.03(A)(5), felonies of the third degree, for sexual conduct that occurred with Jane between February 22, 2019 and July 31, 2021. In count five, appellant was charged with rape in violation of R.C. 2907.02(A)(1)(b), a felony of the first degree, as it was alleged that appellant engaged in vaginal intercourse and fellatio with Jane between February 22, 2019 and February 21, 2020, when Jane was 12 years old.

**{¶ 4}** Appellant initially pled not guilty to the charged offenses. However, on February 23, 2023, following plea negotiations, appellant entered a guilty plea to third-degree sexual battery as set forth in count one and to an amended count five, sexual battery in violation of R.C. 2907.03(A)(5), a felony of the second degree. By pleading guilty, appellant admitted he engaged in sexual conduct with his stepdaughter, including vaginal intercourse and fellatio, when she was between 12 and 14 years old. In exchange for his guilty plea to these two offenses, the state agreed to dismiss the remaining charges. Following a Crim.R. 11(C) plea colloquy, the trial court accepted appellant's plea and found him guilty. The court ordered a presentence-investigative report (PSI)

---

1. The name "Jane" is a pseudonym adopted in this opinion for purposes of privacy and readability.

and scheduled sentencing for April 3, 2023.

{¶ 5}   At the sentencing hearing, the court indicated it had reviewed the PSI, a sentencing memorandum filed by the state, letters submitted in support of appellant, and victim impact statements it received, including a statement from Jane's therapist.  The court then heard from defense counsel, appellant, Jane, and Jane's mother.  Defense counsel noted that appellant had no prior criminal record, had family and friends that supported him, had not had any issues while on pretrial services for 11 months, took responsibility for his actions by entering a guilty plea, and had served in the Army for six years.  Appellant apologized to Jane, Jane's Mother, his son, and "all the families."  He noted he had no excuse for what he pled guilty to and stated that "with my time in, I'm hoping to get the help I need, and continue to hopefully be a functioning member of society."

{¶ 6}   Jane and Jane's Mother both spoke of the trauma and significant impact the sexual offenses had on Jane.  Jane noted that appellant used threats and bribery to force her to have sex with him.  He would take away her phone or refuse to allow her to have friends over unless she would have sex with him.  He threatened to harm her family if she told anyone about the sexual abuse.  Jane stated that appellant's actions have left her feeling "mad at the world."  She indicated she is angry all the time, trusts no one, feels resentful and powerless, finds it hard to focus at school, and struggles every day.  Jane's mother testified that the abuse has caused Jane trauma that will last the rest of Jane's life and it has caused Jane to lose confidence, feel self-hatred, be desperate for acceptance, and lack trust in others.

{¶ 7}   After hearing from those present in the courtroom, the trial court considered the principles and purposes of felony sentencing under R.C. 2929.11 and the seriousness and recidivism factors set forth in R.C. 2929.12 before announcing its sentence.  The

court imposed a 48-month prison term on count two and a mandatory minimum prison term of 8 years with a maximum possible prison term of 12 years on count five. The terms were run consecutively, for an aggregate prison term of 12 to 16 years. The court imposed a mandatory five-year term of postrelease control and classified appellant a tier III sex offender.

{¶ 8} Appellant appealed his sentence, raising four assignments of error for review.

{¶ 9} Assignment of Error No. 1:

{¶ 10} THE IMPOSITION OF CONSECUTIVE SENTENCES WAS UNLAWFUL.

{¶ 11} In his first assignment of error, appellant contends the trial court erred in imposing consecutive sentences without making all of the required findings at the sentencing hearing. Specifically, he contends the trial court failed to find that he acted "under a course of conduct" or that the unusual harm experienced by Jane arose from that course of conduct, as required by R.C. 2929.14(C)(4)(b). He further argues that the trial court erred in imposing consecutive sentences as the court failed to include the consecutive sentencing findings in its sentencing entry.

{¶ 12} A felony sentence is reviewed under the standard set forth in R.C. 2953.08(G)(2). *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 1. R.C. 2953.08(G)(2) states that an appellate court may modify or vacate a sentence if the court finds "by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *Id.*

{¶ 13} When imposing consecutive sentences, a sentencing court is required "to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry." *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, syllabus. Specifically, the sentencing court must find that (1)

- 4 -

consecutive sentences are necessary to protect the public from future crime or to punish the offender, (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and (3) that one of the following applies:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4).

**{¶ 14}** Though a trial court must make the required findings at the sentencing hearing, "a word-for-word recitation of the language of the statute is not required." *Bonnell* at ¶ 29. "[A]s long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Id.*

**{¶ 15}** In the present case, the trial court stated the following in imposing consecutive sentences:

> I am, however, going to run those sentences consecutive to each other, and will make the following findings. I do make the findings that consecutive sentences are necessary to protect the public from future crime, or more appropriate in this case, to punish the offender.
>
> I'm going to find that it is not disproportionate to the seriousness of the offender's conduct and the danger the

offender poses to the public.

> And finally, I'm going to find that the harm was so great or unusual – again, based on the factors that I have put on the record and the nature of the offenses themselves, the harm is so great or unusual that a single term does not adequately reflect its seriousness or the Defendant's conduct. So those are going to be consecutive for a total of 12 years.

{¶ 16} Appellant contends that the foregoing was insufficient to satisfy R.C. 2929.14(C)(4)(b) because the court did not make a specific finding that the two sexual battery offenses were "committed as part of one or more courses of conduct" before concluding that the harm caused by the multiple offenses was so great or unusual that a single prison term did not adequately reflect the seriousness of his conduct.[2] We disagree with appellant's arguments. Just prior to making the above-quoted findings, the trial court had discussed appellant's course of conduct in committing the sexual offenses. The court had noted that appellant's sexual abuse of Jane "ha[d] been ongoing multiple times over the course of an extended period of time" and was a "predatory scenario, in terms of emotional blackmail, bribery, things of that nature, that took place over a prolonged period of time." In imposing consecutive sentences, the trial court made reference to these findings by stating, "based on the factors that I have put on the record." The court was not required to use the exact language set forth in the sentencing statute when making findings under R.C. 2929.14(C)(4). *See Bonnell* at ¶ 37 (stating that a sentencing court is not "required to give a talismanic incantation of the words of the statute, provided that the necessary findings can be found in the record and are incorporated into the sentencing entry"). Here, the record contains the necessary findings that appellant's sexual battery offenses were committed as part of a course of conduct and that the harm

---

2. As appellant did not have a prior criminal history and did not commit the offenses while awaiting trial or sentencing, R.C. 2929.14(C)(4)(a) and (c) did not apply.

caused to Jane from appellant's course of conduct was so great or unusual that no single prison term adequately reflected the seriousness of the conduct. Therefore, to the extent appellant's first assignment of error contends that the trial court failed to make all the necessary findings under R.C. 2929.14(C)(4) to impose consecutive sentences, we overrule his arguments.

{¶ 17} Although we find no error in the trial court's imposition of consecutive sentences at the sentencing hearing, we find that the trial court erred by failing to incorporate its consecutive sentencing findings into appellant's sentencing entry. *See Bonnell* at ¶ 37 ("to impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14[C][4] at the sentencing hearing and incorporate its findings into its sentencing entry"). As appellant's sentencing entry does not contain the R.C. 2929.14(C)(4) findings, we sustain appellant's first assignment of error in part. However, "[the] trial court's inadvertent failure to incorporate statutory findings in the sentencing entry after properly making those findings at the sentencing hearing does not render the sentence contrary to law." *Id.* at ¶ 30. "[R]ather, such a clerical mistake may be corrected by the court through a nunc pro tunc entry to reflect what actually occurred in open court." *Id.* Accordingly, we remand this matter to the trial court for the limited purpose of issuing a nunc pro tunc sentencing entry to reflect the trial court's statutory findings under R.C. 2929.14(C)(4). *See State v. Fridley*, 12th Dist. Clermont No. CA2016-05-030, 2017-Ohio-4368, ¶ 52; *State v. Lung*, 12th Dist. Clermont No. CA2014-12-081, 2015-Ohio-3833, ¶ 20.

{¶ 18} Assignment of Error No. 2:

{¶ 19} THE TRIAL COURT FAILED TO CONSIDER REQUIRED SENTENCING FACTORS.

{¶ 20} In his second assignment of error, appellant argues that the trial court erred

when sentencing him on his sexual battery convictions as the court failed to consider certain factors set forth in R.C. 2929.12. Specifically, appellant contends the court failed to consider "his battle-induced PTSD or its relationship to [his] offense conduct as required by R.C. 2929.12(F)." He further contends that the court did not properly consider his remorse under R.C. 2929.12(D) and (E) because the court "delegated that consideration to the PSI writer."

{¶ 21} In sentencing a criminal defendant, a trial court is guided by two statutes: R.C. 2929.11 and 2929.12. *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, ¶ 36-37, *abrogated on other grounds by Oregon v. Ice*, 555 U.S. 160, 129 S.Ct. 711 (2009). R.C. 2929.11(A) sets forth the purposes of felony sentencing, which are to protect the public from future crime by the offender and others, to punish the offender, and to promote the effective rehabilitation of the offender using the minimum sanctions that accomplishes those purposes without imposing an unnecessary burden on government resources. A felony sentence must be reasonably calculated to achieve the purposes set forth in R.C. 2929.11(A) "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact on the victim, and consistent with sentences imposed for similar crimes committed by similar offenders." R.C. 2929.11(B).

{¶ 22} Pursuant to R.C. 2929.12(A), a trial court has "discretion to determine the most effective way to comply with the purposes and principles of sentencing set forth in" R.C. 2929.11. In exercising that discretion, the court "shall consider" the factors set forth in R.C. 2929.12(B) and (C) as they relate to the seriousness of the offender's conduct, the factors set forth in R.C. 2929.12(D) and (E) as they relate to the likelihood of the offender's recidivism, the factors set forth in R.C. 2929.12(F) as they pertain to the offender's service in the armed forces, and "any other factors that are relevant to achieving those purposes and principles of sentencing." R.C. 2929.12(A). "Although a

court imposing a felony sentence must consider the purposes of felony sentencing under R.C. 2929.11 and the sentencing factors under R.C. 2929.12, 'neither R.C. 2929.11 nor 2929.12 requires [the] court to make any specific factual findings on the record.'" *State v. Bryant*, 168 Ohio St.3d 250, 2022-Ohio-1878, ¶ 20, quoting *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, ¶ 20.

**{¶ 23}** R.C. 2953.08(G)(2), which governs appellate review of felony sentences, "does not permit an appellate court to conduct an independent review of a trial court's sentencing findings under R.C. 2929.12 or its adherence to the purposes of felony sentencing under R.C. 2929.11." *Bryant* at ¶ 21, citing *Jones* at ¶ 41-42. Further, an appellate court cannot "substitute its judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12." *Jones* at ¶ 42. Instead, appellate review is limited under R.C. 2953.08(G)(2)(b) to whether the sentence imposed is clearly and convincingly contrary to law. As this court has previously recognized, "[a] sentence is not clearly and convincingly contrary to law where the trial court 'considers the principles and purposes of R.C. 2929.11, as well as the factors listed in R.C. 2929.12, properly imposes postrelease control, and sentences the defendant within the permissible statutory range.'" *State v. Combs*, 12th Dist. Clermont No. CA2020-01-004, 2020-Ohio-5397, ¶ 28, quoting *State v. Ahlers*, 12th Dist. Butler No. CA2015-06-100, 2016-Ohio-2890, ¶ 8.

**{¶ 24}** Appellant contends the sentences imposed on the sexual battery offenses are contrary to law because the court "ignored" a factor it was mandated by R.C. 2929.12(F) to consider. R.C. 2929.12(F) provides that "[t]he sentencing court shall consider the offender's military service record and whether the offender has an emotional, mental, or physical condition that is traceable to the offender's service in the armed forces of the United States and that was a contributing factor in the offender's commission of the

offense or offenses."

{¶ 25} Contrary to appellant's assertions, the record reflects that the trial court considered appellant's military history and his PTSD diagnosis when imposing a sentence. Defense counsel spoke at sentencing about the six years appellant spent in the army. The PSI report also laid out appellant's military service and his PTSD diagnosis. At the sentencing hearing, the trial court specifically stated that "the PSI indicates the Defendant is in fact a veteran with the armed services. Statutorily, I do have to take that into consideration." The court further indicated in its sentencing entry that in imposing appellant's sentence it considered the principles and purposes of felony sentencing as well as the various factors set forth in R.C. 2929.12, which included appellant's military service and any emotional, mental, or physical condition that was traceable to that service. Accordingly, we find no merit to appellant's contention that the court neglected to consider his military service or PTSD diagnosis in fashioning an appropriate sentence for appellant's sexual battery offenses. Pursuant to *Jones*, this court cannot independently weigh this factor or substitute its judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12. *See Jones* at ¶ 42.

{¶ 26} Appellant also argues his sentence is contrary to law as the trial court did not properly consider his remorse under R.C. 2929.12(D) and (E). Appellant contends the trial court "delegated that consideration to the PSI writer."

{¶ 27} In considering the offender's likelihood to commit future crimes, R.C. 2929.12(D)(5) and (E)(5) instruct a trial court to consider whether the offender has shown genuine remorse for the offenses he committed. Remorse "refers to a person's sadness, guilt, or regret for a wrong that person has committed." *State v. Brunson*, 171 Ohio St.3d 384, 2022-Ohio-4299, ¶ 72. "[A] person with remorse expresses it by acknowledging his

or her wrongdoing."  *Id.* at ¶ 80.

{¶ 28} The record demonstrates that the trial court considered appellant's remorse before imposing a sentence for the two sexual battery convictions.  The court heard appellant state during allocution that he had "no excuse for what I have pled guilty to" and it listened to appellant apologize to the victim, the victim's mother, and his own family. The court stated, "I do take into consideration the fact that he did take responsibility, and the fact that he entered a plea, avoiding the victim having to testify in a trial setting."  The court also took into consideration information set forth in the PSI, stating the following:

> And finally, I'm also taking into consideration a comment that was made by our PSI writer that even though [appellant] did in fact take responsibility by entering a guilty plea, my understanding from the PSI writer is that [appellant] continued to maintain that he did not perform these acts.  And it was categorized in the PSI as [appellant] showing no remorse whatsoever, which, again, is one of the aggravating factors, statutorily speaking.[3]

{¶ 29} Appellant argues that the above statement indicates that the trial court "delegated the consideration of remorse to the PSI writer—thereby conferring the judicial power to a nonjudge."  Appellant contends such delegation resulted in reversible error and, in support of this argument, cites *State v. Fair*, 2d Dist. Montgomery No. 8081, 1983 Ohio App. LEXIS 13314 (Oct. 14, 1983).  In *Fair*, a defendant entered into a plea agreement after the state agreed to reduce a drug offense to allow an 18-month sentence. *Id.* at *3.  The agreement further provided that if the defendant cooperated with a particular police detective to bring about a drug bust, the defendant's sentence could be further

---

3. The PSI contained the following with respect to the "Offender's Version" of the offenses:

> When asked about his version of the Instant Offense, the offender reported that:  "I pled guilty to 2 counts of sexual battery where I had sexual interactions with my stepdaughter when she was 12."  During the interview with the offender he showed no remorse, he was adamant that none of the allegations are true, and that he took a plea deal to avoid life sentences.

- 11 -

reduced. *Id.* at *3-4. Under the agreement, the detective had "sole discretion" on whether the defendant satisfactorily cooperated such that his sentence should be further reduced. *Id.* The Second District found this agreement resulted in reversible error. "A trial court may not delegate its power, authority or discretion to any other person except where authorized by law. That portion of the plea bargain agreement subjecting the defendant's performance to the sole discretion of a police officer is a nullity." *Id.* at *7.

{¶ 30} The circumstances in *Fair* are wholly distinguishable from those before us. Here, the trial court did not delegate its sentencing discretion to the PSI writer. Rather, the court asked the PSI writer to prepare a report. Pursuant to R.C. 2951.03(A)(1), in preparing a PSI, "the officer making the report shall inquire into *the circumstances of the offense* and the criminal record, social history, and present condition of the defendant, all information available regarding any prior adjudications of the defendant as a delinquent child * * * and any other matters specified in Criminal Rule 32.2." (Emphasis added.) The PSI writer included in its report the offender's version of the circumstances of the sexual battery offenses, and in doing so, the PSI writer noted that appellant "showed no remorse" during the interview. The trial court was required to consider the information set forth in the PSI report. *See* R.C. 2929.19(B)(1)(a) ("At the sentencing hearing, the court, before imposing sentence shall * * * [c]onsider the record, any information presented at the hearing by any person * * * and, if one was prepared, the presentence investigation report"). However, merely because the PSI writer perceived that appellant lacked remorse, that does not mean the trial court conferred judicial power to the PSI writer to make a judicial determination as to appellant's remorse for purposes of sentencing. The trial court considered the PSI writer's opinion, appellant's actions in pleading guilty, and his statement in allocution. Considering all this, the trial court—not the PSI writer—made a determination as to appellant's remorse and his risk of recidivism. The trial court—not

the PSI writer—determined what the appropriate sentence was for appellant's sexual battery offenses.

{¶ 31} Accordingly, as the trial court properly considered appellant's remorse, his military service, and the resulting PTSD diagnosis, we find no merit to appellant's contentions that the trial court failed to consider required sentencing factors under R.C. 2929.12. Because the record demonstrates that the trial court considered the factors listed in R.C. 2929.12, the principles and purposes of sentencing under R.C. 2929.11, properly imposed postrelease control, and sentenced appellant within the permissible statutory range for his second- and third-degree felonies under R.C. 2929.14(A)(2)(a) and (3)(a), respectively, we find that the sentences imposed on each sexual battery conviction were not contrary to law. We therefore overrule appellant's second assignment of error.

{¶ 32} Assignment of Error No. 3:

{¶ 33} [APPELLANT'S] INCULPATORY STATEMENT TO THE PSI WRITER WAS INVALID AND UNCONSTITUTIONAL.

{¶ 34} In his third assignment of error, appellant argues that his constitutional right to counsel and right against self-incrimination were violated when the PSI writer, a probation officer, interviewed him about the circumstances of the offense. Appellant maintains that his "uncounseled, and unwarned statements about his reasons for entering a plea, which the PSI writer characterized as showing no remorse, could not be used against him."

{¶ 35} As an initial matter, we note that appellant never objected to the accuracy of the contents of the PSI, although permitted to do so under R.C. 2951.03(B)(2). He also never objected to the court considering the statements he made to the PSI writer on the basis that they were obtained in violation of his Fifth and Sixth Amendment rights to the United States Constitution, his rights under Article 1, Section 10 of the Ohio Constitution,

- 13 -

or in violation of the requirements of Crim.R. 44.

**{¶ 36}** "As a general rule an appellate court will not consider an alleged error that the complaining party did not bring to the trial court's attention at the time the alleged error is said to have occurred." *State v. Slagle*, 65 Ohio St.3d 597, 604 (1992). The purpose behind this rule is to prevent the tactic of remaining silent on a fatal error during trial court proceedings with the expectation of demanding a reversal on appeal. *Id.* However, "Crim.R. 52(B) softens the general rule forbidding [appellate] consideration of unobjected-to errors." *Id.* Crim.R. 52(B) provides, that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." To constitute plain error, there must be (1) a deviation from a legal rule, (2) an error that is "fundamental, palpable, and obvious on the record such that it would have been apparent to the court without an objection," and (3) the error must have "affected the defendant's substantial rights, that is, the error must have affected the outcome of the trial." *State v. Dawson*, 12th Dist. Butler No. CA2021-08-099, 2022-Ohio-2984, ¶ 11, citing *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002) and *State v. Barnette*, 12th Dist. Butler No. CA2012-05-099, 2013-Ohio-990, ¶ 30. "The burden of demonstrating plain error is on the party asserting it." *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, ¶ 16. "An appellate court will take notice of plain error with 'utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *Dawson* at ¶ 11, quoting *State v. Baldev*, 12th Dist. Butler No. CA2004-05-106, 2005-Ohio-2369, ¶ 12.

### Right to Counsel

**{¶ 37}** Appellant argues that his Sixth Amendment right to counsel extended to the PSI interview as it was a "critical stage" of the proceedings against him. He further argues that his right to counsel at a PSI interview is protected by Section 10, Article I of the Ohio

Constitution and Crim.R. 44.[4]

{¶ 38} The Sixth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, provides that "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defense." Section 10, Article I of the Ohio Constitution provides that "[i]n any trial, in any court, the party accused shall be allowed to appear and defend in person and with counsel." Finally, Ohio Crim.R. 44 provides, in relevant part, as follows:

> **(A) Counsel in serious offenses**. Where a defendant charged with a serious offense is unable to obtain counsel, counsel shall be assigned to represent the defendant at every stage of the proceedings from their initial appearance before a court through appeal as of right, unless the defendant, after being fully advised of their right to assigned counsel, knowingly, intelligently, and voluntarily waives their right to counsel.
>
> * * *
>
> **(C) Waiver of counsel**. Waiver of counsel shall be in open court and the advice and waiver shall be recorded as provided in Rule 22. In addition, in serious offense cases the waiver shall be in writing.

{¶ 39} "The Sixth Amendment right to counsel applies to critical stages of criminal proceedings." *State v. Schleiger*, 141 Ohio St.3d 67, 2014-Ohio-3970, ¶ 13, citing *United States v. Wade*, 388 U.S. 218, 224, 87 S.Ct. 1926 (1967) and *Iowa v. Tovar*, 541 U.S. 77, 80, 124 S.Ct. 1379 (2004). "[S]entencing is a critical stage of the proceedings and * * *

---

4. Appellant contends "[his] rights to counsel under the Ohio constitution and the Rules of Criminal Procedure are broader than the federal right." Though appellant contends that his right to counsel under the Ohio Constitution is broader than that afforded to him under the Sixth Amendment to the United States as applied to the States through the Due Process Clause of the Fourteenth Amendment, he has failed to develop or explain this argument or provide any case law in support of such argument. *See* App.R. 16(A)(7). "It is not this court's duty to 'root out' arguments that can support an assignment of error" and we decline to do so in this instance. *State v. Miller*, 12th Dist. Clermont No. CA2016-08-057, 2017-Ohio-2801, ¶ 22. *See also State v. Searight*, 1st Dist. Hamilton No. C-230060, 2023-Ohio-3584, ¶ 12 ("However, because he fails to explain how or why Section 10 [of the Ohio Constitution] would provide due process protections beyond those afforded to him by the federal Due Process Clause or by Ohio's Due Course of Law Clause, we decline to ponder these questions").

'[t]he defendant has a legitimate interest in the character of the procedure which leads to the imposition of sentence even if he may have no right to object to a particular result of the sentencing process.'" *Id.* at ¶ 14, quoting *Gardner v. Florida*, 430 U.S. 349, 358, 97 S.Ct. 1197 (1977). *See also Mempa v. Rhay*, 389 U.S. 128, 137, 88 S.Ct. 254 (1967) (holding that a defendant must be afforded an attorney at a revocation of probation hearing).

**{¶ 40}** In the present appeal, we are asked to determine whether a presentence interview by a probation officer is a critical stage of a criminal proceeding following a defendant's guilty plea. This issue appears to be a matter of first impression in this state. However, several federal circuit courts have considered the issue and found that in non-capital cases, a presentence interview with a federal probation officer is not a critical stage of the proceedings to which the right to counsel attached. *See United States v. Tisdale*, 952 F.2d 934, 939-940 (6th Cir.1992); *United States v. Wood*, 907 F.2d 1540, 1543 (5th Cir.1990), *cert. denied*, 498 U.S. 1070, 111 S.Ct. 792 (1991); *State v. Jackson*, 886 F.2d 838, 844-845 (7th Cir.1989). *See also United States v. Johnson*, 935 F.2d 47, 50 (4th Cir.1991) (holding that case law finding that a defendant's right to counsel does not attach to presentence interviews was "persuasive" and the same rationale applied to defeat a defendant's claim of right to counsel during an ex parte presentence conference). These courts determined that a presentence interview is not a critical stage because a probation officer does not have an adversarial role during a presentence interview with the defendant. That is to say that the probation officer does not act on behalf of the prosecution. *Tisdale* at 939; *Jackson* at 844. Rather, the probation officer is "an agent of the court and assists the court in arriving at a just sentence." *Johnson* at 50. "In interviewing a defendant as a part of the presentence investigation, the probation officer serves as a neutral information gatherer for the sentencing judge." *Jackson* at 844.

However, it is the judge that "determine[s] the facts in fashioning the appropriate sentence for a criminal defendant. The * * * judge is not bound by the characterizations made by a probation officer." *Id.*[5]

{¶ 41} We are persuaded by the reasoning of the Fourth, Fifth, Sixth, and Seventh Circuit Courts. We therefore hold that within the context of a guilty plea, a presentence interview with a probation officer is not a "critical stage" in which a defendant's right to counsel attaches under the Sixth Amendment to the United States Constitution or under Section 10, Article I of the Ohio Constitution because the probation officer does not act in an adversarial role or on behalf of the prosecution. We further find that nothing in Crim.R. 44 affords a defendant who pled guilty the right to counsel at a presentence interview conducted by a probation officer acting on behalf of the sentencing court. Appellant's arguments that his right to counsel was violated are, therefore, overruled.

**Right to Remain Silent**

{¶ 42} Appellant argues that his constitutional right to remain silent under the Fifth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution was violated when the trial court, at the conclusion of the plea proceedings, "ordered [appellant] to speak with the PSI writer, advising [appellant] he would be arrested if he failed to attend the interview." Appellant implies that the PSI interview was a custodial interrogation which entitled him to receive *Miranda* warnings, and without such warnings being provided, his statements to the probation officer had to be suppressed and could not be considered by the court in imposing a sentence.

---

5. We note that defense counsel is not prohibited from attending a presentence interview with his or her client. As the Sixth Circuit stated, "[i]f a defendant requests the presence of counsel—or if an attorney indicates that his client is not to be interviewed without the attorney being there—the probation officer should honor the request." *United States v. Tisdale*, 952 F.2d 934, 940 (6th Cir.1992). In the present case, there is no indication in the record that appellant or his counsel requested that counsel be present for the presentence interview.

{¶ 43} "The Fifth Amendment to the United States Constitution provides persons with a privilege against self-incrimination, which is applicable against the states through the Due Process Clause of the Fourteenth Amendment." *State v. Johnson*, 163 Ohio App.3d 132, 2005-Ohio-4243, ¶ 44 (10th Dist.), citing *Malloy v. Hogan*, 378 U.S. 1, 84 S.Ct. 1489 (1964). The privilege against self-incrimination is also guaranteed by Section 10, Article I, of the Ohio Constitution, which provides, in pertinent part, that "[n]o person shall be compelled, in any criminal case, to be a witness against himself." "A defendant's right to remain silent extends past trial and through sentencing * * * because liability for the crime with which the defendant is charged continues until the sentence has been imposed." *Brunson*, 2022-Ohio-4299 at ¶ 75, citing *Mitchell v. United States*, 526 U.S. 314, 328-330, 119 S.Ct. 1307 (1999).

{¶ 44} "Because a witness may voluntarily testify to matters which may be incriminating, the privilege against self-incrimination is not self-executing. The witness seeking the privilege must 'claim it.'" *State v. Gideon*, 165 Ohio St.3d 156, 2020-Ohio-6961, ¶ 9, quoting *United States v. Monia*, 317 U.S. 424, 427, 63 S.Ct. 409 (1943). "If the witness answers a question, the answer will be considered voluntary." *Id.*, citing *Minnesota v. Murphy*, 465 U.S. 420, 427, 104 S.Ct. 1136 (1984).

{¶ 45} A defendant's general obligation to appear before a probation officer and answer questions truthfully does not in itself convert a defendant's otherwise voluntary statements into compelled ones. *Murphy* at 427. "'[T]he [F]ifth [A]mendment privilege against self-incrimination is not self-executing in the context of a meeting with a probation officer.'" *State v. Ward*, 2d Dist. Montgomery No. 2017-CA-81, 2018-Ohio-2572, quoting *United States v. Miller*, 910 F.2d 1321, 1326 (6th Cir.1990).

{¶ 46} Nonetheless, at times, "when it is necessary to 'safeguard the core constitutional right protected by the Self-incrimination Clause,' an assertion of privilege

against self-incrimination is not required." *Gideon* at ¶ 10, quoting *Chavez v. Martinez*, 538 U.S. 760, 770, 123 S.Ct. 1994 (2003). Exceptions to asserting the privilege exist within the context of custodial interrogations; *see Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602 (1966); and in situations "where the assertion of the privilege is penalized so as to '[foreclose] a free choice to remain silent, and * * * [compel] * * * incriminating testimony.'" *Murphy* at 434, quoting *Garner v. United States*, 424 U.S. 648, 661, 96 S.Ct. 1178 (1976). With respect to the later situation, the state cannot compel an individual to appear and testify only to seek to induce him to "forgo the Fifth Amendment privilege by threatening to impose economic or other sanctions 'capable of forcing the self-incrimination which the Amendment forbids.'" *Id.*, quoting *Lefkowitz v. Cunningham*, 431 U.S. 801, 806, 97 S.Ct. 2132 (1977).

**{¶ 47}** As for custodial interrogations, *Miranda* requires "the exclusion of incriminating statements obtained during custodial interrogation unless the suspect fails to claim the Fifth Amendment privilege after being suitably warned of his right to remain silent and the consequences of his failure to assert it." *Id.* at 430, citing *Miranda* at 467-469 and 475-477. However, "this extraordinary safeguard 'does not apply outside the context of the inherently coercive custodial interrogations for which it was designed.'" *Id.,* quoting *Roberts v. United States*, 445 U.S. 552, 560, 100 S.Ct. 1358 (1980). *Miranda* defined a custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda* at 444. "[T]he ultimate inquiry is simply whether there [was] a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125, 103 S.Ct. 3517 (1983), quoting *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711 (1977).

**{¶ 48}** Appellant suggests he was compelled by the trial court's threat of arrest to

speak to the probation officer and that the presentence interview was akin to a custodial interrogation. We begin our analysis by noting that appellant was not threatened by the trial court with arrest if he did not meet with the probation officer or cooperate with a presentence investigation. Rather, the record of the plea agreement indicates the court stated the following at the conclusion of the plea proceedings:

> THE COURT: I will note the State has an objection to me continuing the bond, but based on the pre-trial performance, I will continue the bond pending sentencing, which means, when you leave here today, go to pre-trial. If you don't, a capias will issue. And also, they will help you get the PSI set up.

The trial court's reference to an arrest was in connection with the extension of appellant's bond and his need to report to pretrial services to continue that bond. Though the trial court instructed appellant to schedule a PSI interview, it never threatened to have him arrested if he chose not to speak during the interview. The issue of a capias was not premised on whether appellant elected to speak with or respond to the probation officer during the PSI interview process. Additionally, neither Crim.R. 32.2 nor R.C. 2951.03, the criminal rule and statute governing presentence investigations, penalize a defendant for invoking his Fifth Amendment right to remain silent during a PSI interview. *Ward*, 2018-Ohio-2572 at ¶ 21. Appellant, therefore, was not compelled to give incriminating statements to the PSI writer.

{¶ 49} Furthermore, contrary to appellant's arguments, he was not subject to a custodial interrogation during the PSI interview. Appellant was not under formal arrest or otherwise deprived of his freedom of action in any significant way when meeting with the probation officer. Rather, appellant had been released on bond and was permitted to schedule a convenient time to meet with the probation officer in order to complete the presentence interview. *Miranda* does not apply "'to routine presentence interviews

conducted for the benefit of a [trial] judge in the exercise of his substantial discretion at sentencing.'" *Ward* at ¶ 20, quoting *Miller*, 910 F.2d at 1326.

{¶ 50} As appellant was not subject to a custodial interrogation and was not compelled by the threat of arrest or some other penalty that foreclosed his right to remain silent, we find that appellant was required to "claim" or invoke his right against self-incrimination if he wished to remain silent when asked by the probation officer about the circumstances of the sexual battery offenses during the presentence interview. There is nothing in the record indicating that appellant invoked his constitutional right against self-incrimination during the PSI interview process. As a result, appellant relinquished the protections afforded by the Fifth Amendment to the United States Constitution and Section 10, Article I, of the Ohio Constitution by voluntarily answering the probation officer's questions regarding the circumstances of the sexual battery offenses. Accord *Ward* at ¶ 14-17 (finding no Fifth Amendment violation where a defendant voluntarily answered a probation officer's questions regarding his drug use and possession during a presentence interview). Appellant's statements to the probation officer were properly considered by the trial court when imposing appellant's sentence.

{¶ 51} Accordingly, for the reasons discussed above, we find that appellant's arguments that his constitutional right to counsel and his right against self-incrimination were violated by questioning during the presentence investigation are without merit. The trial court did not err in considering the statements appellant made to the probation officer regarding the circumstances of the sexual battery offenses. Appellant's third assignment of error is overruled.

{¶ 52} Assignment of Error No. 4:

{¶ 53} TRIAL COUNSEL WAS INEFFECTIVE IN THE SENTENCING PROCEEDINGS.

**{¶ 54}** In his fourth assignment of error, appellant argues he received ineffective assistance of counsel as defense counsel (1) failed to accompany him to the PSI interview and (2) failed to instruct him to assert his right to silence when questioned by the probation officer about his version of the sexual battery offenses during the PSI interview. Appellant maintains that as a result of these deficiencies, he received an "unwarranted sentence" based on a finding that he lacked remorse.

**{¶ 55}** "In order to prevail on an ineffective-assistance-of-counsel claim, a defendant must prove that counsel's performance was deficient and that the defendant was prejudiced by counsel's deficient performance." *State v. Davis*, 159 Ohio St.3d 31, 2020-Ohio-309, ¶ 10, citing *State v. Bradley*, 42 Ohio St.3d 136, 141-142 (1989) and *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984). "Thus, the defendant must demonstrate that counsel's performance fell below an objective standard of reasonableness and that there exists a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." *Id.*, citing *Bradley* at paragraphs two and three of the syllabus. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Bradley* at 142, quoting *Strickland* at 694. The failure to satisfy either the deficiency prong or the prejudice prong of the test is fatal to a claim of ineffective assistance of counsel. *State v. Madrigal*, 87 Ohio St.3d 378, 389 (2000).

**{¶ 56}** Appellant's claims of ineffective assistance of counsel fail as appellant cannot demonstrate that trial counsel's representation was deficient or that he was prejudiced by the alleged deficiencies. As discussed in our resolution of the third assignment of error, within the context of a guilty plea, a presentence interview with a probation officer is not a "critical stage" in which a defendant's right to counsel attaches. Counsel was not required to attend the presentence interview and her decision not to

attend the interview with a client who had already pled guilty and admitted to the facts underlying the sexual battery offenses did not amount to deficient performance.

{¶ 57} As for appellant's claim that counsel "failed to instruct him to assert the right to silence when the PSI writer asked about the offense facts," we note that the record does not disclose what advice, if any, counsel gave appellant prior to his presentence interview with the probation officer. "This court cannot speculate on trial counsel's knowledge, conversations with appellant, or * * * advice to appellant." *State v. Leonicio*, 12th Dist. Butler No. CA2022-08-077, 2023-Ohio-2433, ¶ 27. Our review is limited to the information contained in the record before us.

{¶ 58} However, even if we assume defense counsel did not advise appellant to remain silent when he was questioned about his version of the sexual battery offenses during the PSI interview, we find that appellant cannot demonstrate he was prejudiced by the alleged deficiency. In imposing appellant's sentence, the trial court did not rely solely on the probation officer's characterization of appellant's statements as showing no remorse for the offenses. Rather, the trial court made its own finding on appellant's remorse after considering the PSI in conjunction with appellant's actions in pleading guilty, his apology to the victim, and his statement in allocution.

{¶ 59} Furthermore, appellant's remorse was only one of many factors the trial court considered under R.C. 2929.12 in fashioning an appropriate sentence. In addition to factors meant to evaluate appellant's risk of recidivism, the trial court was "required to consider the seriousness of the conduct and other relevant factors to achieve the purposes and principles of sentencing." *Brunson*, 2022-Ohio-4299 at ¶ 86. Although appellant did not have a prior criminal record, he used his relationship with his 12-year-old stepdaughter to facilitate the offenses. Appellant's sexual abuse of Jane occurred over a prolonged period of time, involved a "predatory scenario, in terms of emotional

blackmail, bribery, [and] things of that nature," and caused significant emotional and psychological harm to Jane. These facts as found by the trial court, even without the lack-of-remorse characterization in the PSI, demonstrate that the outcome of the sentencing hearing would not have been different. Appellant cannot demonstrate prejudice in the imposed sentence and, therefore, cannot prevail on his ineffective assistance of counsel claim. His fourth assignment of error is overruled.

{¶ 60} Judgment affirmed in part, reversed in part and remanded to the trial court for the limited purpose of issuing a nunc pro tunc sentencing entry to reflect the trial court's statutory findings under R.C. 2929.14(C)(4).

BYRNE, J., concurs.

PIPER, J., concurs in part and dissents in part.

**BYRNE, J., concurring separately.**

{¶ 61} I concur with and fully join the court's opinion. As mentioned by the court in footnote 4, Downing asserts—but does not quite argue—that the language concerning the right to counsel in Article I, Section 10 of the Ohio Constitution is "broader" than the right to counsel recognized by the Sixth Amendment to the United States Constitution. I agree with the court's determination that because Downing did not develop or explain his assertion, we should not develop an argument for him.

{¶ 62} However, I write separately to emphasize—as I have before—that Ohio courts should be open to arguments that, in some instances (whether in the criminal context or otherwise), the Ohio Constitution may recognize rights beyond those recognized by the United States Constitution. *State v. Walton*, 12th Dist. Butler No. CA2020-12-124, 2021-Ohio-3958, ¶ 38 (Byrne, J., concurring).

{¶ 63} The need to conduct an independent analysis of the language of the Ohio

Constitution always exists when parties present questions of first impression under both the state and federal constitutions. The two constitutions are, after all, separate legal documents. But the need for independent analyses is particularly acute when the federal and state constitutions address the same general topic but use *different language* to describe that topic. *See* Jeffrey S. Sutton, *51 Imperfect Solutions: States and the Making of American Constitutional Law*, 174, 177 (2018) ("There is no reason to think, as an interpretive matter, that constitutional guarantees of independent sovereigns, even guarantees with the same or similar words, must be construed in the same way. * * * There will never be a healthy 'discourse' between state and federal judges about the meaning of core guarantees in our American constitutions if the state judges merely take sides on the federal debates and federal authorities, as opposed to marshaling the distinct state texts and histories and drawing their own conclusions from them").

{¶ 64} Here, the federal and state constitutional provisions that Downing references use different language to describe the right to counsel. Specifically, the Sixth Amendment discusses the right to counsel as applying in the context of "all criminal prosecutions," while Article I, Section 10 of the Ohio Constitution refers to the right to counsel as applying "[i]n any trial." On first blush the Ohio Constitution's language appears narrower in scope than the Sixth Amendment's language. *See State v. Morris*, 1st Dist. Hamilton No. C-230108, 2023-Ohio-4105, ¶ 69 (Winkler, J., dissenting) (observing that the reference to "[i]n any trial, in any court" in Article I, Section 10 of the Ohio Constitution appears narrower in scope than the reference to "[i]n all criminal prosecutions" in the Sixth Amendment). However, to conduct this analysis, we would need to review the text in more detail, and specifically we would need to examine the original public meanings of the phrases "[i]n any trial" and "[i]n all criminal prosecutions" at the time those phrases were adopted as part of their respective constitutions. *But see*

*Morris*, 2023-Ohio-4105 at ¶ 54 (finding that Article I, Section 10 of the Ohio Constitution "provides greater protection of a criminal defendant's right to counsel than the Sixth Amendment" based on the court's perception of "Ohio's longstanding history of strongly protecting an accused's right to counsel," but ignoring the differences in the relevant texts and not analyzing their original public meanings).

{¶ 65} Downing has not offered any such argument upon which we could base our analysis. In fact, Downing has not even stated which words in the relevant right-to-counsel provisions are relevant to his argument, or if he even bases his argument on the text of those provisions. Perhaps Downing has some other basis for his assertion that the right to counsel in Article I, Section 10 is "broader" than the right to counsel in the Sixth Amendment. We do not know because Downing has not elaborated on this assertion. We cannot conduct a text-based analysis in these circumstances, or even any analysis at all. *See* App.R. 16(A)(7); *Miller*, 2017-Ohio-2801 at ¶ 22; *Searight*, 2023-Ohio-3584 at ¶ 12.

**PIPER, J., concurring in part and dissenting in part.**

{¶ 66} I concur with my colleagues in overruling Downing's assignments of error. However, I would decline to remand for a nunc pro tunc entry. Returning this matter to the trial court so that verbiage of what was said at sentencing is unnecessary. Downing left the sentencing hearing with a complete understanding of what the trial court considered when it imposed consecutive sentences.

{¶ 67} Downing received notice as to why the trial court gave consecutive sentences. Downing did not object to the findings at sentencing and Downing has no claim of prejudice. As we decided in our lead opinion, Downing was aware of what findings the trial court considered, thus no harm, no foul. Amending the entry serves no

purpose—practical or otherwise.

{¶ 68} My previous dissents more fully expressed the reasons I object to the needless redundancies being imposed upon trial courts. *State v. Halbert*, 12th Dist. Warren No. CA2023-03-027, 2023-Ohio-4471; (Piper, P.J., concurring in part and dissenting in part); *State v. Gable*, 12th Dist. Clermont Nos. CA2023-07-049 and CA2023-07-050, 2024-Ohio-293 (Piper, J., dissenting). It is a waste of judicial resources to generate an amended entry of no consequence. *See State v. Smith*, 80 Ohio St.3d 89, 104 (1997). Thus, although I completely concur in the substance of our resolution for each assignment of error I dissent as to the disposition of remanding for a nunc pro tunc entry.